MARK LANIER, (Admitted *Pro Hac Vice*)
JONATHAN WILKERSON, (Admitted *Pro Hac Vice*)
ALEX BROWN, (Admitted *Pro Hac Vice*)
THE LANIER LAW FIRM, PC
10940 W. Sam Houston Pkwy N, Ste. 100
Houston, TX 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

SHALINI DOGRA, SBN 309024
DOGRA LAW GROUP PC
4065 Glencoe Avenue, Ste. 107
Marina Del Rey, CA 90292
Telephone: (747) 234-6673
Facsimile: (310) 868-0170

Attorneys for Named Plaintiff and Proposed Class

# UNITED STATES DISCTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| HOPE DUNN an Individual;<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington Corporation; MASSIMO ZANETTI BEVERAGE USA, Inc., a Delaware Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No:<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>1. COMMON LAW FRAUD<br><br>2. NEGLIGENT MISREPRESENTATION<br><br>3. UNJUST ENRICHMENT<br><br>4. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq*.<br><br>5. VIOLATION OF THE FALSE ADVERTISING LAW ("FAL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.<br><br>6. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CALIFRONIA BUSINESS AND PROFESSIONS CODE §17200 *et seq*.<br><br>7. BREACH OF EXPRESS WARRANTY<br><br>8. BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Hope Dunn, by and through her attorneys, brings this action on behalf of herself and all other similarly situated against Costco Wholesale Corporation ("Defendant Costco"), Massimo Zanetti Beverage USA, Inc. ("Defendant Massimo") and Does 1 through 50. Plaintiff hereby alleges, on information and belief, except as those allegations which pertain to the named Plaintiff, which allegations are based on personal knowledge, as follows:

**NATURE OF THE ACTION**

1.      To capitalize on the premium price consumers are willing to pay for pure arabica coffee beans, as well the manufacturing costs saved from using a less expensive ingredient like robusta bean, Defendants intentionally make false and misleading representations about their "Kirkland Signature™ Dark Roast Fine Ground Decaffeinated Arabica Coffee." ("the Product"). *See* Exhibit One to the Class Action Complaint.

2.      Aware that consumers place a heightened value on arabica beans, Defendants consistently label and advertise the Product as "100% Arabica Coffee." Defendants deliberately make false and misleading statements about the composition and ingredients of the Product to increase profits at the expense of unsuspecting consumers.

3.      The Product is not actually 100% arabica coffee,  nor is it comprised solely and entirely of arabica beans. In reality, approximately ten percent of the Product's composition is robusta beans.

4.      At all relevant times, Defendants packaged, advertised, marketed, distributed and sold the Product to consumers at retail "Costco" store locations throughout California and the United States based on the misrepresentation that the Product was manufactured solely and entirely from arabica beans. In truth, a sizable percentage of the Product contained robusta beans as one of the Product's ingredients.

5.      Reasonable consumers rely on product labeling in making their purchasing decisions. When buyers see a beverage or ground coffee labeled as "100% Arabica Coffee," they reasonably expect that the liquid drink will indeed be pure arabica coffee, and made solely from arabica beans. In reliance on Defendants' misleading marketing and deceptive advertising practices for the Product, Plaintiff and similarly situated class members reasonably thought they were purchasing

"100% arabica coffee" and buying a product that was comprised wholly of arabica beans. In fact, neither Plaintiff nor any of the members of the putative class received a ground coffee constituted solely by arabica beans, the beverage item and ingredient they reasonably thought they were buying.

6.      Plaintiff and other consumers purchased the Product because they reasonable believed, based on Defendants' packaging and advertising that the Product was made solely and entirely from arabica beans.   Had Plaintiff and other consumers known the Product actually contained robusta beans, and was not 100% arabica coffee, they would not have purchased the Product or would have paid significantly less for them. As a result, Plaintiff and other similarly situated class members have been deceived and suffered economic injury.

7.      Defendants' labeling, marketing and advertising uniformly involves multiple false and misleading statements, as well as material omissions of fact, concerning Product that have injured Plaintiff and the class by tricking them into buying premium priced coffee product and a beverage that is entirely different from what they sought at the time of purchase.

8.      Based on the fact that Defendants' advertising misled Plaintiff and all others like her, Plaintiff brings this class against Defendants to seek reimbursement of the premium they and the Class Members paid due to Defendants' false and deceptive representations about the ingredients of the Product.

9.      Plaintiff seeks relief in this action individually and on behalf of all purchasers of the Product statewide in California for common law fraud, negligent misrepresentation, and unjust enrichment. Additionally, Plaintiff seeks relief in this action individually and on behalf of all purchasers of the Product in California for violation of the California Bus. & Prof. Code §§17500, *et seq.*, California's False Advertising Law ("FAL"), Bus. & Prof. Code §§17200, *et seq.*, California's Unfair Competition Law ("UCL"), as well as Uniform Commercial Code §§ 2-313 and 2-314, for breach of express and implied warranties.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and, at least one class member is a citizen of a state different from

Defendants. Additionally, more than two-thirds of the members of the class reside in states other than those in which Defendant Costco and Defendant Massimo are citizens and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

11.     The Court has personal jurisdiction over Defendants pursuant to Cal. Code Civ. P. § 410.10, as a result of Defendants' substantial, continuous and systematic contacts with the State, and because Defendants have purposely availed themselves to the benefits and privileges of conducting business activities within the  State.

12.     Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Moreover, Defendants distributed, advertised and sold the Product, which is the subject of the present Complaint, in this District.

## PARTIES

13.     Plaintiff is a resident of California, and lives in Los Angeles County.

14.     Defendant Costco is a corporation headquartered in the State of Washington, with its principal place of business at 999 Lake Drive, Issaquah, WA 98027. Defendant Costco manufactures, mass markets, and distributes the Product throughout California and the United States. Defendant Costco owns and operates the "Kirkland Signature" trademark.

15.     Defendant Massimo is a Delaware corporation headquartered in the State of Virginia, with its principal place of business at 1370 Progress Road, Suffolk, VA 23434. Defendant Massimo manufactures, mass markets, and distributes the Product throughout California and the United States.

16.     Plaintiff is informed and believes, and based thereon alleges that at all times relevant herein each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

17.     Plaintiff reserves her right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of

Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

18.     Consumers often purchase a particular type of coffee due to the fact that each specific variety of coffee bean has its own unique flavor and taste. Moreover, consumers typically associate arabica with being a superior quality coffee bean, and are regularly willing to pay a premium price for a coffee comprised of arabica beans. Indeed, Defendants knew or had reason to know that consumers would find the challenged attribute important in their decision to purchase the Product, as indicated by the fact that Defendants repeatedly emphasized the "100% Arabica Coffee" advertising claim prominently on the label of every canister of the Product in a visible and attention-grabbing font. Furthermore, Defendants explicitly highlighted the "100% Arabica Coffee" trait as a key feature and descriptor on their own website for the Product.

19.     Defendants consistently advertise the Product as "100% Arabica Coffee." However, Defendants' labeling and marketing scheme for the Product is blatantly false. The Product is anything but 100% arabica coffee. On the contrary, the Product is comprised of at least ten percent robusta beans.

20.     Each unit of the Product is labeled "100% Arabica Coffee." Every coffee canister of the Product bears a label that clearly displays the statement "100% Arabica Coffee" in bold, eye-catching letters. Defendants further market and advertise the Product as "100% Arabica Coffee" on their website. These representations by Defendants are false and misleading because the Product contains at least ten percent robusta beans.

21.     The Product is labeled "100% Arabica Coffee" and Defendants' own website further expressly markets the Product as being "100% Arabica coffee." *https://www.costco.com/kirkland-signature-decaffeinated-coffee%2C-dark-roast%2C-  3lbs.product.100334883.html* (last visited June 26, 2020). Defendants deliberately misled consumers into believing the Product solely and entirely contained arabica coffee, a premium type of coffee bean, to justify the high price Defendants charged for ordinary less-desirable and/or lower-quality coffee that actually comprised the Product. *///*

**THE PRODUCT IS NOT 100% ARABICA COFFEE**

22.    Lab tests of the Product confirm with scientific reliability and validity that the Product is comprised of approximately ten percent robusta beans. One year of testing consistently revealed ten percent robusta levels in samples of the Product from different parts of the country, regardless of location. In other words, the science indicates that the Product is not made entirely from arabica beans, and further affirms the nationwide breadth of Defendants' deceptive marketing and advertising practices.

23.    Consequently, because the Product lacks a pure arabica coffee composition, consumers are not receiving the benefit of their bargain. Moreover, Defendants are deceptively saving substantial sums of money in manufacturing the Product because robusta beans tend to cost half the price of arabica beans. Defendants' marketing, labeling, and packaging of the Product are designed to, and do in fact, deceive, mislead and defraud consumers.

24.    Defendants have no reasonable basis for labeling, advertising, marketing and packaging the Product as containing "100% Arabica Coffee." As a result, consumers are consistently misled into purchasing the Product for the commonly known and/or advertised benefits and characteristics of arabica coffee when in fact no such benefits could be had given that the Product is in fact devoid of pure arabica coffee, and contains notable amounts of robusta coffee.

25.    21 U.S.C. § 343 states that a food product is misbranded if "its labeling is false or misleading in any manner, if it is offered for sale under the name of another food," or if it is an imitation of another food." Similarly, under California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6, § 110660, "Any food is misbranded if its labeling is false or misleading in any particular." Here, Defendants' labeling and packaging that accompanied the Product identified the ground coffee as being or containing "100% Arabica Coffee," even though it was not fact comprised solely and entirely of arabica beans. On the contrary, the Product contained a mixture of arabica and robusta beans that Defendants blended to imitate the appearance and taste of arabica coffee. But, instead of pure arabica beans, the Product was actually comprised of robusta beans that were mixed in with coffee grindings and concocted to resemble arabica coffee.

26.     Additionally, § 402(b) of the Food, Drug and Cosmetic Act ("FDCA") affirms that a food product is adulterated "if any valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance has been substituted, wholly or in part therefor; or if damage or inferiority has been concealed in any manner; or if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength or make it appear better or of greater value than it is." Likewise, under California's Sherman Law, Article 5, § 110585, "any food is adulterated" if : (a) any valuable constituent has been in whole or in part omitted or abstracted therefrom; (b) if any substance has been substituted wholly or in part therefor; (c) if damage or inferiority has been concealed in any manner or; (d) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength to make it appear better or of greater value than it is."

27.     Defendants engaged in economic adulteration, and violated the FDCA and California's Sherman Law, by selling a beverage that partially or wholly lacked the valuable constituents of 100% arabica coffee, and that had been substituted in part of whole. Defendants further committed unlawful adulteration by concealing the inferiority of the Product. Moreover, Defendants' conduct also constitutes prohibited adulteration because substances had been added and mixed into the Product to make it appear better or of a greater value than it actually was. Significantly, Defendants perpetuated all the practices of adulteration with the intention of reaping ill-gotten profits at the expense of consumers.

28.     Defendants intentionally perpetuated the economically motivated adulteration of the Product. Robusta and arabica coffee beans emit their own unique flavors. An individual will detect whether robusta beans have been mixed in with arabica ones when more than ten percent of the mixture contains robusta. Thus, if a manufacturer dilutes arabica coffee with ten percent or less of robusta, a consumer will fail to notice any taste difference and will still sense only the flavor of arabica. Conspicuously, each unit of the Product consistently contains 90% arabica and 10% robusta, the maximum level of adulteration a manufacturer can implement without triggering a consumer's attention. Clearly, Defendants maintained a standard practice of adulterating the Product and purposely manipulated its robusta levels to maximize profits.

29.     Additionally, empirical evidence here establishes that Defendants have adopted uniform adulteration tactics on a nationwide basis. This further demonstrates that Defendants falsified the Product knowingly and deliberately.

30.     Moreover, multiple studies have confirmed that robusta beans have substantially more caffeine than arabica. Hence, Defendants' adulteration not only deprived consumers of the decaffeinated beverage they reasonably thought they were buying, it provided them with the precise opposite, a caffeinated drink. Furthermore, doctors regularly recommend decaffeinated coffee as a safer alternative for pregnant women, as well as individuals with heart conditions. By replacing a purported decaffeinated beverage with high-caffeine ingredients, Defendants exposed these two vulnerable groups to serious health risks.

31.     The malicious actions taken by Defendants caused significant harm to consumers. Plaintiff and similarly situated class members who purchased the Product because they reasonably believed, based on Defendants' marketing, packaging, labeling and advertising schemes, that the Product was comprised purely and entirely of arabica coffee beans. Had Plaintiff and other class members known the Product actually contained robusta beans as an ingredient, they would not have bought the Product or would have paid substantially less money for it. As a result, Plaintiff and similar situated class members have been deceived and suffered economic injury.

32.     Plaintiff purchased the Product from Costco locations in Los Angeles County during the relevant time period, including as recently as 2019 and 2020.  Plaintiff bought and consumed the Product because, based on Defendants' marketing and labeling scheme, she believed the Product was made solely from arabica beans and was "100% Arabica Coffee." Plaintiff purchased the Product in reliance upon the labeling and advertising of the Product claiming that it contained "100% Arabica Coffee," without knowledge of the fact that it was partially comprised of robusta coffee beans. Plaintiff consumed the Product as intended and would not have purchased the Product if she had known that the advertising as described herein was false, misleading and deceptive.

33.     During the time when she was purchasing and consuming the Product, Plaintiff did not take steps to verify the Product's components, or whether the Product contained any ingredient other than arabica beans. A reasonable consumer such as Plaintiff would not have considered it

necessary to verify the clear message conveyed by Defendants' labeling, advertising, marketing and packaging of the Product.

34.     Plaintiff was economically harmed by Defendants' false labeling, deceptive marketing and misleading packaging conveying the message that the Product was 100% arabica coffee and comprised solely of arabica beans. The value of the Product that Plaintiff actually purchased and consumed was materially less than its value as misrepresented by Defendants.

35.     Plaintiff would consider purchasing the Product again if the labeling were accurate.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this class action on behalf of herself individually and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3).  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this class action on behalf of herself individually and all others similarly situated statewide in California. Plaintiff seeks to represent a class a comprised of all persons in California who, on or after September 16, 2016 in California, (the "Class Period")  purchased the Product for household use and not for resale or distribution.

37.     The proposed class consists of all consumers who purchased the Product in the State of California for personal use and not for resale, during the time period September 16, 2016, through the present. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

38.     This action is properly brought as a class action for the following reasons:

(a) The members in the proposed class are so numerous that individual joinder of all members is impracticable and disposition of the class members' claims in a single class action will provide substantial benefits to the parties and Court, and is in the best interests of the parties and judicial economy.

(b) Plaintiff stands on equal footing with and can fairly and adequately protect the interests of all members of the proposed class. All units and cannisters of the Product bear the

misleading "100% Arabica Coffee" labeling and are falsely advertised as "100% Arabica Coffee." Defendants' false statements and "100% arabica coffee" labeling occur on the packaging of the units of Product itself, and thus every individual consumer who purchases the Product is exposed to the false advertising. Defendants have, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action. Further, the class definition itself describes a set of common characteristics sufficient to allow a prospective plaintiff or class member to identify himself or herself as having a right to recover based on the description.

(c) Plaintiff will fairly and adequately represent and protect the interests of the class, has no interest incompatible with the interests of the class, and has retained counsel competent and experienced in class actions, consumer protection, and false advertising litigation, including within the context of food and the food industry. Plaintiff's attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class. Plaintiff will  has no interests antagonistic to those of other proposed class members, and she has retained attorneys experienced in consumer class actions and complex litigation as counsel.;

(d) Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is so small, that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class. Further, individual cases would be so numerous as to inefficiently exhaust judicial resources. Plaintiff seeks damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.;

(e) Questions of law and fact common to the class predominate over any questions affecting only individual class members. There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members.  Such

questions of law and fact common to Plaintiff and the class include, without limitation:

    i.  Whether Defendants breached an express warranty made to Plaintiff and the Class;

    ii.  Whether Defendants breached the implied warranty of fitness for a particular purpose;

    iii.  Whether Defendants were unjustly enriched by their conduct;

    iv.  Whether Class Members suffered an ascertainable loss as a result of Defendants' misrepresentations;

    v.  Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive relieve and/or monetary relief, and if so, the amount and natural of such relief;

    vi.  Whether Defendants made any statement they knew or should have known were false or misleading;

    vii.  Whether Defendants maintained a longstanding marketing policy, practice and strategy of labeling, advertising and selling the Product with the "100% Arabica coffee" claim even though it was not comprised entirely of arabica coffee beans;

    viii.  Whether the utility of Defendants' practices, if any, outweighed the gravity of the harm to their victims;

    ix.  Whether Defendants' conduct violated public policy, included as declared by specific constitutional, statutory, or regulatory provisions;

    x.  Whether Defendants' conduct or any of their practices violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, The Federal Food, Drug and Cosmetics Act, 28 U.S.C. §§ 301 *et seq.* and its implementing regulations, 21 C.F.R. §§ 101 *et seq.*, the Cal. Health & Safety Code §§ 109875 et seq., or any other regulation, statute or law;

CLASS ACTION COMPLAINT

xi. Whether Defendants represented that the Product has characteristics, uses, or benefits which it does not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

xii. Whether Defendants represented that the Product is of a particular standard, quality, or grade, when it was really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

xiii. Whether Defendants advertised the Product with the intent not to sell it as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

xiv. Whether Defendants represented that the Product has been supplied in accordance with a previous representation when it has not, within the meaning of Cal. Civ. Code § 1770(a)(16);

xv. The proper equitable and injunctive relief;

xvi. The proper amount of restitution or disgorgement;

xvii. The proper amount of reasonable litigation expenses and attorneys' fees;

(f) Plaintiff's claims are typical of the claims of the members of the proposed class. Plaintiff and all class members have been injured by the same practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories. Plaintiff's claims are typical of class members' claims, as they are based on the same underlying facts, events and circumstances relating to Defendants' conduct.;

(g) As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(b)(4).

## <u>FIRST CAUSE OF ACTION</u>

### Common Law Fraud

39. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

40.     Plaintiff brings this claim individually and on behalf of the members of her proposed Class.

41.     As discussed above, Defendants provided Plaintiff and the Class Members with false or misleading material information and failed to disclose material facts about the Product, including but not limited to the fact that is was not comprised of 100% arabica coffee beans.   These misrepresentations and omissions were made with knowledge of their falsehood.

42.     The misrepresentations and omissions made by Defendants, upon which Plaintiff the Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Product.

43.     The fraudulent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

### SECOND CAUSE OF ACTION

#### Negligent Misrepresentation

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

46.     As discussed above, Defendants represented the Product as in fact "100% arabica coffee," but failed to disclose that the Product actually contained robusta beans, and is not actually comprised of 100% arabica beans.  Defendants had a duty to disclose this information.

47.     At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false or made them without knowledge of their truth or veracity.

48.     At an absolute minimum, Defendants negligently misrepresented or negligently omitted material facts about the Product.

49.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Product.

50.     Plaintiff and Class Members would not have bought the Product if they had known the true facts.

51.     The negligent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

### THIRD CAUSE OF ACTION

#### Unjust Enrichment

52.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

54.     Plaintiff and Class Members conferred benefit on Defendants by purchasing the Product.

55.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because the Product is not in fact 100% arabica coffee and resulted in purchasers being denied the full benefit of their purchase because they did not purchase a product that was actually "100% Arabica Coffee."

56.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

### FOURTH CAUSE OF ACTION

#### Violation of Cal. Civ. Code §§1750, *et seq.*

57.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

58.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"). The CLRA prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sales of any goods or services to consumers. *See* Cal. Civ. Code §1770.

59.     The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

60.     Defendants are each a "person" under the CLRA. Cal. Civ. Code §1761 (c).

61.     Plaintiff and the putative Class Members are "consumers" under the CLRA. Cal. Civ. Code §1761 (d).

62.     The Product constitutes a "good" under the CLRA. Cal. Civ. Code §1761 (a).

63.     Plaintiff and the putative Class Members' purchases of the Product within the Class Period constitute "transactions'" under the CLRA. Cal. Civ. Code §1761 (e).

64.     Defendants' actions and conduct described herein reflect transactions that have resulted in the sale of goods to consumers.

65.     Defendants' failure to label the Product in accordance with California labeling requirements constitutes an unfair, deceptive, unlawful and unconscionable commercial practice.

66.     Defendants' actions have violated at least seven provisions of the CLRA, including §§ 1770(a)(1), 1770 (a)(2), 1770 (a)(3)1770(a)(5), 1770(a)(7), 1770 (a)(9) and 1770(a)(16).

67.     As a result of Defendants' violations, Plaintiff and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed Product, which they would not have paid had the Product been labeled correctly, or in the form of the reduced value of the Product relative to the Product as advertised and the retail price they paid.

68.     Pursuant to § 1782 of the CLRA Plaintiff notified Defendants in writing of the particular violations of § 1770 of the CLRA, and demanded Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and to give notice to all affected consumers of their intent to do so. On or about June 26, 2020, Plaintiff sent Defendants a notice and demand letter, notifying Defendants of their violations of the CLRA and demanding that within 30 days, Defendants remedy the unlawful, unfair, false, and/or deceptive practices complained of herein. Plaintiff advised Defendants that if they refused the demand, Plaintiff would seek monetary damages for herself and all others similarly situated, as well as

1  injunctive relief, restitution, and any other relief the Court may deem just and proper. Defendants

2  have failed to comply with the letter. Consequently, pursuant to California Civil Code §1782,

3  Plaintiff, on behalf of herself and all other members of the Class, seeks compensatory damages and

4  restitution of any ill-gotten gains due to Defendants' acts and practices that violate the CLRA.

5  69.    Defendants have failed to rectify or agree to rectify at least some of the violations

6  associated with actions detailed above and give notice to all affected consumers within 30 days of

7  receipt of the Cal. Civ. Code § 1782 notice.  Thus, Plaintiff seeks actual damages and punitive

8  damages for violations of the Act.

9  70.    In addition, pursuant to Cal. Civ. Code §1780(a)(2), Plaintiff is entitled to, and

10  therefore seeks, a Court order enjoining the above-described wrongful acts and practices that violate

11  Cal. Civ. Code §1770.

12  71.    Plaintiff and Class Members are also entitled to recover attorneys' fees, costs,

13  expenses, disbursements, and punitive damages pursuant to Cal. Civ. Code §§ 1780 and 1781.

14  **FIFTH CAUSE OF ACTION**

15  **Violation of California Business & Professions Code §§ 17500, *et seq*.**

16  72.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

17  paragraphs above as if fully set forth herein.

18  73.    Defendants engaged in unfair and deceptive acts and practices, in violation of the

19  California Business and Professions Code § 17500 *et seq*., by marketing and/or selling the Product

20  without disclosure of the material fact that the Product did not actually contain "100% Arabica

21  Coffee." These acts and practices, as described above, have deceived Plaintiff and other class

22  members, causing them to lose money as herein alleged and have deceived and are likely to deceive

23  the consuming public, in violation of those sections. Accordingly, Defendants' business acts and

24  practices, as alleged herein, have caused injury to Plaintiff and the other class members.

25  74.    Defendants had a duty to disclose that the Product did not contain and was not

26  comprised of "100% Arabica coffee" because this information was a material fact of which

27  Defendants had exclusive knowledge; Defendants actively concealed this material fact; and

28  Defendants made partial representations about the Product but suppressed some material facts.

75.     Defendants' misrepresentation and/or nondisclosure of the fact that the Product lacked "100% Arabica coffee" was the immediate cause of Plaintiff and the other class members purchasing the Product.

76.     In the absence of Defendants' misrepresentation and/or nondisclosure of facts, as described above, Plaintiff and other class members would not have purchased the Product.

77.     Plaintiff and the other class members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

## SIXTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq*.

78.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

79.     Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period September 4, 2016, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

80.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.     "Unfair" Prong

81.     Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid," *or* "the utility of the defendant's conduct is outweighed by the gravity of the harm to the alleged victim.

82.     Defendants' actions of engaging in false and deceptive advertising, marketing, labeling, and of the Product do not confer any benefit to consumers.

83.     Defendants' actions of advertising, marketing, labeling, and the Product in a false,

deceptive and misleading manner cause injuries to consumers because the consumers do not receive a quality of coffee product commensurate with their reasonable expectation.

84. Defendants' actions of advertising, marketing, labeling, and the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers do not receive the benefits they reasonably expect from the Product.

85. Defendants' actions of advertising, marketing, and labeling the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up consuming a ground beverage product that is of a lower quality than what they reasonably were expecting and sought.

86. Defendants' actions of advertising, marketing, and labeling the Product in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up overpaying for the Product and receiving a quality of coffee beverage less than what they expected to receive.

87. Consumers cannot avoid any of the injuries caused by Defendants' false, misleading and deceptive labeling, advertising, and marketing of the Product.

88. Accordingly, the injuries caused by Defendants' activity of advertising, marketing, and labeling, the Product in a false, deceptive and misleading manner outweigh any benefits.

89. Here, Defendants' conduct of advertising, labeling  and marketing the Product in a false, deceptive, and misleading manner has no utility and financially harms purchasers.  Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

90. Defendants' labeling, marketing, and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

91. Defendants knew or should have known of their unfair conduct.

92. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of California Business and Professions Code § 17200.

93. There were reasonable available alternatives to further Defendants' legitimate

business interests, other than the conduct described herein. Defendants could have marketed, labeled, advertised and packaged the Product truthfully, without any dishonest claims about the Product's ingredients, composition and identity.

94.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

95.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising, labeling and marketing the Product in an untruthful manner. Likewise, Plaintiff and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiff and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

96.    As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unfair prong of the UCL because Plaintiff and the Class would not have bought the Product if they had known the truth regarding the ingredients, composition and identity of the Product. Plaintiff and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised quality, effective, or value.

### B.    "Fraudulent" Prong

97.    California Business and Professions Code § 17200, *et seq.,* considers conduct fraudulent and therefore prohibits said conduct if it is likely to deceive members of the public.

98.    Defendants' marketing, labeling, and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent

conduct. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code § 17200 because they are likely to, and did indeed, deceive members of the public.

99.     Defendants knew or should have known of their fraudulent conduct.

100.    There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have labeled, advertised, marketed and packaged the Product accurately.

101.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

102.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff and the Class seek an order of this Court requiring Defendants to cease the acts of fraudulent competition alleged herein.  Likewise, Plaintiff and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiff and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

103.    As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the fraudulent prong of the UCL because Plaintiff and the Class would not have bought the Product if they had known the truth regarding the ingredients and composition of the Product. Plaintiff and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised quality, effectiveness, or value.

*///*

1

### C.   "Unlawful" Prong

2

104.   California Business and Professions Code § 17200, *et seq.*, identifies violations of

3

other laws as "unlawful practices that the unfair competition law makes independently actionable."

4

105.   Defendants' labeling and marketing of the Product, as alleged in the preceding

5

paragraphs, violates California Civil Code § 1750, *et. seq.*, California Business and Professions

6

Code § 17500, *et. seq.*, California's Sherman Law, and the FDCA.

7

106.   Under  21 U.S.C §343 (a), the FDCA expressly defines food as misbranded if "its

8

labeling is false or misleading in any particular."  Similarly, California's Sherman Law, Cal. Health

9

& Safety Code § 110660,  states "any food is misbranded if its labeling is false or misleading in any

10

particular." Additionally, § 402(b) of the FDCA and  Article 5, § 110585  of California's Sherman

11

Law both state that a food product, including beverage like ground coffee,  is adulterated "if any

12

valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance

13

has been substituted, wholly or in part therefor; or if damage or inferiority has been concealed in

14

any manner; or if any substance has been added thereto or mixed or packed therewith so as to

15

increase its bulk or weight or reduce its quality or strength or make it appear better or of greater

16

value than it is."

17

107.   Defendants'  labeling and marketing of the Product, as alleged in the preceding

18

paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

19

Defendants have violated the "unlawful prong" by violating, the FDCA, California's Sherman Law,

20

as well as the State's FAL (Cal. Bus. & Prof. Code § 17500 *et seq.)* and CLRA (Cal. Civ. Code

21

§1770 *et. seq.*).

22

108.   Defendants knew or should have known of their unlawful conduct.

23

109.   As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed

24

above constitute an unlawful business practice within the meaning of California Business and

25

Professions Code § 17200.

26

110.   There were reasonable available alternatives to further Defendants' legitimate

27

business interests, other than the conduct described herein. Defendants could have refrained from

28

displaying untruthful and "100% Arabica coffee" claims on the Product's labeling and advertising.

Furthermore, Defendants could have avoided falsely advertising the Product as "100% Arabica Coffee" throughout their website. Similarly, Defendants could have abstained from misrepresenting the Product's ingredients, composition and identity.

111.   All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

112.   As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unlawful prong of the UCL because Plaintiff and the Class would not have bought the Product if they had known the truth regarding the ingredients of the Product. Plaintiff and the Class paid an increased price due to the misrepresentations about the Product and the Product did not have the promised quality, effectiveness, or value.

113.   Pursuant to Bus. & Prof. Code §§ 17203 and 17535, Plaintiff and the Class are therefore entitled to an order requiring Defendants to cease the acts of unfair competition alleged herein, full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty

114.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

115.   The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

116.   At the time Plaintiff, and each Class Member purchased the Product, they formed a contract with Defendants. The terms of that contract included the promises and affirmations of fact made by Defendants on the Product's labels and through Defendants' marketing and advertising tactics, as described above. Defendants expressly warranted that the Product, amongst other things,

was made entirely, one-hundred percent of arabica coffee beans, and Plaintiff placed importance on Defendants' claims. Defendants' claims constitute an affirmation of fact that became a part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. The Product's labeling and advertising constitute an express warranty, because they are part of the basis of that bargain, and are part of a standardized contract between Plaintiff and The Class Members on one hand, and Defendants on the other.

117.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

118.   Defendants breached the terms of this contract with Plaintiff and the Class, including the express warranties, by failing to provide a ground coffee beverage product that can perform as advertised.

119.   Defendants are in privity with Plaintiff and the Class Members by selling directly to members of the public, and by warranting the Product to them directly or through the doctrine of agency.

120.   Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because Plaintiff and the Class would not have bought the Product if they had known the truth regarding the ingredients and composition of the Product. Plaintiff and the Class paid for the Product in reliance on Defendants' mislabeling and the Product did not have the promised quality, effectiveness, or value. Consequently, Plaintiff and the Class have been damaged.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose

121.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

122.   Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the Product is merchantable as a premium authentic beverage made from 100% arabica coffee beans.

123.   Defendants breached the warranty implied in the contract for the sale of the Product because the Product could not "pass without objection in the trade under the contract description,"

1  was not "of fair average quality within the description," was not "adequately contained, packaged,

2  and labeled as the agreement may require," and did not "conform to the promise or affirmations of

3  fact made on the container or label." *See* U.C.C. § 2-314(2). As a result, Plaintiff and Class members

4  did not receive the goods as impliedly warranted by Defendants to be merchantable.

5        124.   The Product was not altered by Plaintiff or Class Members. The Product was defective

6  when it left the exclusive control of Defendants. Moreover, Defendants knew that the Product would

7  be purchased and used without additional testing by Plaintiff and Class Members.

8        125.   The Product was defectively designed and unfit for its intended purpose and Plaintiff

9  and Class Members did not receive the goods as warranted.

10       126.   As a direct and proximate cause of Defendants' breach of the implied warranty,

11  Plaintiff and Class Members have been injured and harmed because they would not have purchased

12  the Product if they knew the truth about the Product and the Product they received was worth

13  substantially less than the product they were promised and expected.

**PRAYER FOR RELIEF**

15       WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class defined herein,

16  prays for judgment and relief on all Causes of Action as follows:

17       A.    This action be certified and maintained as a class action and certify the proposed class

18              as defined, appointing Plaintiff as representative of the Class, and appointing the

19              attorneys and law firms representing Plaintiff as counsel for the Class;

20       B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

21       C.    That the Court awards compensatory, statutory and/or punitive damages as to all

22              Causes of Action where such relief is permitted;

23       D.    That the Court awards Plaintiff and proposed class members the costs of this action,

24              including reasonable attorneys' fees and expenses;

25       E.    For an order enjoining Defendants from continuing to engage in the unlawful conduct

26              and practices described herein;

27       F.    That the Court awards equitable monetary relief, including restitution and

28              disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon,

24

1    or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure that

2    Plaintiff and proposed class members have an effective remedy;

3    G.    That the Court awards pre-judgment and post-judgment interest at the legal rate;

4    H.    That the Court orders appropriate declaratory relief; and

5    I.    That the Court grants such other and further as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:    September 16, 2020        **DOGRA LAW GROUP PC**

By: _____

SHALINI DOGRA, ESQ.
Attorney for Plaintiff
HOPE DUNN

CLASS ACTION COMPLAINT